TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  | : |  |
|---|---|---|
| OPINION | : | No. 98-611 |
|  | : |  |
| of | : | January 20, 1999 |
|  | : |  |
| BILL LOCKYER | : |  |
| Attorney General | : |  |
|  | : |  |
| ANTHONY S. DA VIGO | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

THE HONORABLE LIZ FIGUEROA, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a corporate entity licensed as a health care service plan enter into an agreement with a network of providers of cosmetic medical services, a specialty not covered by any of the entity's health benefit plans, according to the terms of which the entity would (1) refer its enrollees to a participating provider, or to a provider selected by the enrollee from a directory of participating providers, for medical services at a discounted rate and (2) collect and forward to the provider the fees for such medical services after deducting an "administrative fee"?

CONCLUSION

A corporate entity licensed as a health care service plan may not enter into an agreement with a network of providers of cosmetic medical services, a specialty not covered by any of the entity's health benefit plans, according to the terms of which the entity would (1) refer its enrollees to a participating provider, or to a provider selected by the enrollee from a directory of participating providers, for medical services at a discounted rate and (2) collect and forward to the provider the fees for such services after deducting an "administrative fee."

ANALYSIS

A corporate entity licensed by the Department of Corporations as a health care service plan under the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq.; "Act")[1] offers a variety of full service and specialized health care service contracts. It operates under the Act's requirements serving the legislative purposes set forth in section 1342:

"It is the intent and purpose of the Legislature to promote the delivery of health and medical care to the people of the State of California who enroll in, or subscribe for the services rendered by, a health care service plan or specialized health care service plan by accomplishing all of the following:

"(a)   Assuring the continued role of the professional as the determiner of the patient's health needs which fosters the traditional relationship of trust and confidence between the patient and the professional.

"(b)   Assuring that subscribers and enrollees are educated and informed of the benefits and services available in order to enable a rational consumer choice in the marketplace.

"(c)   Prosecuting malefactors who make fraudulent solicitations or who use deceptive methods, misrepresentations, or practices which are inimical to the general purpose of enabling a rational choice for the consumer public.

"(d)   Helping to assure the best possible health care for the public at

_____

[1] Unidentified section references prior to footnote 2 are to the Health and Safety Code.

the lowest possible cost by transferring the financial risk of health care from patients to providers.

"(e)     Promoting effective representation of the interests of subscribers and enrollees.

"(f)     Assuring the financial stability thereof by means of proper regulatory procedures.

"(g)     Assuring that subscribers and enrollees receive available and accessible health and medical services rendered in a manner providing continuity of care."

The entity has proposed establishing a directory of participating physicians, plastic surgeons, dermatologists, ophthalmologists, and other licensed health care providers, who would perform cosmetic surgery procedures for the entity's enrollees at discounted rates. The entity would refer an enrollee to a participating physician and serve as a third-party intermediary by collecting the fee from the enrollee-patient, retaining a portion as an "administrative fee" for organizing and administering the program, and forwarding the remainder of the fee to the physician-provider.

The proposed medical services are not presently covered by any of the entity's existing health benefit plans. Accordingly, the services would be offered not as a plan benefit, but rather as a "supplemental personal purchasing program." We are asked whether the entity may operate such a program. We conclude that it may not.

Section 1375.1 provides as follows:

"(a)     Every plan shall have and shall demonstrate to the commissioner that it has all of the following:

"(1)     A fiscally sound operation and adequate provision against the risk of insolvency.

"(2)     Assumed full financial risk on a prospective basis for the provision of covered health care services, except that the plan may obtain insurance or make other arrangements for the cost of providing to any subscriber or enrollee covered health care services, the aggregate value of which exceeds five thousand dollars ($5,000) in any year, for the cost of covered health care services provided to its members other than through the plan because medical necessity required their provision before they could be

secured through the plan, and for not more than 90 percent of the amount by which its costs for any of its fiscal years exceed 115 percent of its income for that fiscal year."

Under the proposed program, the entity would assume no financial risk. Payment on a fee-for-service basis would be *entirely* the responsibility of the entity's enrollee. Accordingly, the proposal may not be operated under authority of section 1375.1 or any other provision of the Act.

If the Act does not authorize the proposed program, does any law prohibit its establishment? Section 650 of the Business and Professions Code[2] provides in pertinent part:

". . . [T]he offer . . . by any person licensed under this division of any . . . discount, or other consideration . . . as . . . compensation or inducement for referring patients . . . to any person . . . is unlawful."

A physician is a person "licensed under this division." (§§ 2050-2078.) Consequently, section 650 prohibits the offering of any discount by a physician as inducement for the referral of patients. Here, the offer of a discount would be made to the patient rather than to the referring entity. In such circumstances, may the discount be deemed a proscribed "consideration" given as an "inducement" for the referring of patients?

In interpreting the language of section 650, we apply well recognized principles of statutory construction. An interpretation is favored that would defeat subterfuges, expediencies, or evasions employed to continue the mischief sought to be remedied by the statute or to defeat compliance with its terms or any attempt to accomplish by indirection what the statute forbids. (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467; *Granberry* v. *Islay Investments* (1984) 161 Cal.App.3d 382, 388.)

As noted in 77 Ops.Cal.Atty.Gen. 143, 144 (1994), the Legislature enacted section 650 to protect the public from excessive health care costs (*Mason* v. *Hosta* (1984) 152 Cal.App.3d 980, 986), referrals based on considerations other than the best interests of the patients (*Magan Medical Clinic* v. *Cal. State Bd. Of Medical Examiners* (1967) 249 Cal.App.2d 124, 132; 68 Ops.Cal.Atty.Gen. 28, 31 (1985)), deceit and fraud (63 Ops.Cal.Atty.Gen. 89, 91 (1980)), and payment to a licensee where professional services have not been rendered (65 Ops.Cal.Atty.Gen. 252, 253 (1982)). In *Beck* v. *American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1564, the court observed:

---

[2] Hereafter, unidentified section references are to the Business and Professions Code.

". . . The evil to be proscribed by section 650 '. . . is not just the payment for the referral, but also any relationship where the referral may be induced by considerations other than the best interests of the patients . . . .' (63 Ops.Cal.Atty.Gen. 89, 92 (1980), fn. omitted.)"

Under the proposed program in question, the discount offered by the physician to an enrollee of the entity would constitute "consideration" to the referring entity for purposes of section 650. Specifically, the discount conferred upon an enrollee of the entity would enhance the entity's economically advantageous relationship with the enrollee. The program would be a marketing tool for the entity to use in soliciting new enrollees. The partnership between the physicians and the entity would thus not only benefit the physicians in obtaining new patients, but also the entity in promoting its health care service plans vis-a-vis its competition. In sum, the referrals would be induced by considerations other than the best interests of the patients.

We reject the suggestion that section 650 would be inapplicable here because the proposal would allow the enrollee to select from a list of physicians and other licensed heath care providers. We have previously expressed the view that ". . . even if the [enrollee] could request and receive the referral agency's entire list of professionals willing to [provide services at a discount], the referral would nevertheless be predicated upon considerations other than the best interests of the prospective patient." (77 Ops.Cal.Atty.Gen., *supra*, at 146.) Nor are we dissuaded by the fact that the entity could offer the program not only to its current enrollees *but also former enrollees*. While the entity's economic fortunes may not be significantly enhanced by the participation of its former enrollees, the fact remains that a benefit would be derived by the entity from the discounted services rendered to the vast majority of participants in the proposed program. The operation of the program by the entity apart from the Act would thus violate section 650.

It is concluded that a corporate entity licensed as a health care service plan may not enter into an agreement with a network of providers of cosmetic medical services, a specialty not covered by any of the entity's health benefit plans, according to the terms of which the entity would (1) refer its enrollees to a participating provider, or to a provider selected by the enrollee from a directory of participating providers, for medical services at a discounted rate and (2) collect and forward to the provider the fees for such medical services after deducting an "administrative fee."

\* \* \* \* \*